Cervecería India, Inc., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Rafael Buscaglia, Tesorero de Puerto Rico, interventor.

Núm. 210.—*Sometido:* Mayo 4, 1949. *Resuelto:* Julio 26, 1949.

*J. Alemañy Sosa,* abogado de la peticionaria; *Hon. Procurador General Vicente Géigel Polanco* y *Edgar S. Belaval,* abogado especial éste del Departamento de Justicia, abogados del interventor, querellado en el pleito principal.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

La peticionaria solicitó del Tribunal de Contribuciones de Puerto Rico una sentencia declaratoria por haber surgido una controversia entre ella y el Tesorero de Puerto Rico en cuanto a si de acuerdo con el artículo 28 de la Ley de Espíritus y Bebidas Alcohólicas—Ley núm. 6 de 1936 ((2) pág. 45) según enmendada por la Ley núm. 111 de 12 de mayo de 1943 (pág. 317)—(¹) el segundo estaba facultado para devolver a la pri-

(¹) El artículo 28 dispone:

"Artículo 28.—*Pérdidas en plantas de rectificación, cámaras de proceso, fábricas o cervecerías.*—Los espíritus destilados, vinos y cervezas que se perdieren por causas naturales e inevitables, en cualquier planta de rectificación, cámara de proceso (*processing room*), fábrica o cervecería sometida a la inmediata inspección del gobierno, no estarán sujetos al pago de los impuestos prescritos por esta Ley, pero para que tal exención se otorgue deberá presentarse

mera los arbitrios cobrados y pagados sobre 1,323 cajas de cerveza con más de 5,000 galones de la misma que la Cervecería India, Inc. alegó tenía en sus almacenes los cuales se habían dañado por causas naturales e inevitables sin haber mediado fraude, colusión, culpa o negligencia de su parte.

Expedimos el auto para revisar la resolución del Tribunal de Contribuciones al efecto de que la exención que concede el artículo 28 de la ley, supra, es en relación a "pérdidas físicas que durante la rectificación, en las cámaras de proceso y en los envases, ocurren, ordinariamente, en el curso de la preparación para el mercado de los líquidos en cuestión, con motivo de su manipulación al través de artefactos mecánicos y por seres humanos, y no a pérdidas debidas a reacciones químicas que alteren, dañándolo, el producto de referencia, después de acaecido el suceso tributable de su manufactura."

No erró el tribunal al así resolverlo. Es de notarse que en las alegaciones de la querella se hace constar que al dañarse la cerveza en cuestión ya estaba en los almacenes de la peticionaria, envasada y en sus correspondientes cajas, es decir, ya estaba embotellada y que el artículo 28, supra, expresamente se refiere a la cerveza que se perdiere por causas

al Tesorero prueba convincente y satisfactoria demostrativa de que tales pérdidas se debieron a causas naturales que el fabricante no pudo evitar, así como que no hubo fraude, colusión, culpa o negligencia de parte del fabricante; *Disponiéndose,* que, en ningún caso se concederá un margen de pérdida mayor de seis por ciento (6%) sobre el montante de galones prueba de espíritus destilados ingresados en cámaras de proceso. Para conceder este margen de pérdidas en cámaras de proceso será requisito indispensable hacer o tomar un inventario físico de las existencias que haya en las mismas a la expiración de cada período de seis (6) meses comprendido entre enero 1ro. a junio 30 y julio 1ro. a diciembre 31 de cada año; *Disponiéndose, además,* que los espíritus en existencia en toda cámara de proceso a la fecha en que se practique este inventario, no podrán ser incluídos en los cómputos pertinentes para la determinación del márgen de pérdidas a conceder a la expiración del semestre siguiente. Las pérdidas por derrames ocurridos en las cervecerías serán computadas a base del mismo por ciento (6%), considerando el montante de galones medida sometidos a envase durante el mes a que dicha pérdida se refiere, a excepción de aquellos casos de destrucción por incendio o fuerza mayor, en las cuales circunstancias se determinará por el Tesorero el montante de la excepción."

naturales e inevitables ''en cualquier planta de rectificación, cámara de proceso (*processing room*), fábrica o cervecería sometida a la inmediata inspección del gobierno.'' Nada dice la ley sobre exención por pérdidas que ocurran en los almacenes de una cervecería después que la cerveza ha sido embotellada y almacenada. Dicho artículo requiere que la pérdida haya ocurrido en un sitio que esté sometido ''. . . a la inmediata inspección del gobierno. . .'' . En ninguna parte de su querella alegó la peticionaria que la cerveza, una vez sacada de los tanques de envejecimiento—que están bajo el control del gobierno como tanques de adeudo—y embotellada y almacenada, continuara sometida a la inmediata inspección del gobierno. Por el contrario, el Tesorero sostiene que una vez embotellada la cerveza y pagados los tributos, al sacarla de los tanques, cesa la supervisión por parte del gobierno. De manera que, si la cerveza al ser sacada de los tanques y pagarse los arbitrios correspondientes, no había sufrido pérdidas, bien por derrames o por haberse dañado, (aceptando sin resolverlo que las pérdidas de que habla la ley incluya cerveza dañada—*Cf. Ekhardt & Becker Brewing Co.* v. *Kavanagh*, 112 F.2d 751 (C.C.A. 6, 1940)— y se dañó por cualquier causa o se perdió por derrames (rotura de las botellas, por ejemplo), después de estar embotelladas y almacenadas, dichas pérdidas no están cubiertas por el artículo 28, supra. *Falls City Brewing Co.* v. *United States*, 12 F. Supp. 6 (D.C., Ky., 1935).

El hecho de que en un caso anterior el Tribunal de Contribuciones hubiera dado una interpretación distinta a la ley y que el Tesorero no solicitara la revisión ante este Tribunal no implica que el tribunal inferior no pudiera variar de criterio y resolver el presente caso en la forma en que lo hizo.

*Debe confirmarse la resolución recurrida.*

El Juez Asociado Sr. Negrón Fernández se inhibió.